Neils C. CHRISTENSEN, Ann Christensen, Donna Christensen, a minor, by her father and next friend, Neils C. Christensen, Lena W. Koupal, and Robert Koupal, Appellants,

v.

Earl H. GAMMONS, Appellee.

No. 3344.

District of Columbia Court of Appeals.

Argued Dec. 9, 1963.

Decided Feb. 18, 1964.

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief, for appellants.

James A. Welch, Washington, D. C., with whom H. Mason Welch, J. Harry Welch, J. Joseph Barse and Walter J. Murphy, Jr., Washington, D. C., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Appellee's automobile, operated by his chauffeur, Edward Moon, collided with a parked automobile owned by appellant Neils C. Christensen, as a result of which he and the other appellants, passengers therein, were injured. They filed suit against appellee, alleging that his employee was not a fit driver and that appellee knew, or by the exercise of reasonable care should have known, this fact. Appellee relied upon the defense that an Act of God caused the chauffeur to become suddenly ill, with the accident subsequently ensuing. The case was tried to a jury, which returned a verdict in favor of appellee. This appeal followed.

Two errors are claimed: (1) the failure of the court to specifically instruct the jury that appellee had the burden of proving the defense of an Act of God by a preponderance of the evidence; and (2) the refusal of the trial judge to admit into evidence hospital records showing the physical condition of one "Edward Moon" in 1956.

At pretrial appellants were permitted to amend their original complaint by an additional allegation asserting the negligence of appellee, based on his employment of Moon to drive his car after Moon had suffered a heart attack in 1956.

At trial, although the testimony was somewhat in conflict, essentially it appears that appellee's automobile, while being driven by Moon in a northerly direction on Eleventh Street, veered from its course

and crossed into the opposite lane, ultimately striking appellants' automobile parked at the westerly curb. Approximately one hour after the accident, Moon was found several blocks away face down in the snow and was removed to Casualty Hospital where he died some two weeks later.

Expert testimony established that Moon's death was due to a cerebral hemorrhage with hypertension and arteriosclerosis. Appellants' expert stated that an accident could "trigger" the cerebral hemorrhage; appellee's medical witness was of the opinion that the cerebral vascular accident began while Moon was driving and caused him to lose control of the car.

The case was then submitted to the jury on the question whether the accident resulted from Moon's sudden illness immediately prior to impact or whether his negligence caused the collision which precipitated the cerebral hemorrhage.

The jury was instructed that if Moon was negligent, his lack of care could be imputed to appellee, his employer; but if the chauffeur's conduct in failing to keep his vehicle under control was due to an Act of God, this was a complete defense; that if Moon suffered a stroke immediately prior to the collision and that was the proximate cause of the accident, the stroke, under the law, was an Act of God, "one arising wholly beyond the control of human agencies and which occurs independently of human acts of negligence."

■ An examination of the charge in its entirety discloses that the trial judge explained that the burden of proof is upon the party who asserts the affirmative of an issue which he must establish by a preponderance of the evidence, that is, the evidence favoring his position must be the more convincing, have more force and effect. We are satisfied that the jury was properly charged as to the responsibility of appellee in respect to the proof of the affirmative defense of an Act of God as the cause of the driver's action in operating the car on the wrong side of the street, resulting in the collision with appellants' parked vehicle.

■ We hold that this issue was properly submitted to the jury. It was resolved in favor of appellee, and there being substantial evidence to support the verdict, we are without authority to reverse it.

■ Appellants' second error is directed to the refusal of the trial judge to admit hospital records [1] on the ground that the custodian in charge of the records did not make the entries and therefore her testimony as to their contents would be hearsay, and, on the further ground, that these records were not of the hospitalization following the accident but were related to the hospitalization of a patient five years before the collision in this case.

We are of the opinion that ordinarily the admission of the hospital records would have been proper under the Federal Shop Book Rule, 28 U.S.C.A. § 1732, even though they contained expressions of opinions by a physician of physical facts plain to the trained eye. The law concerning the admission of medical records has been set forth by the United States Court of Appeals for this circuit in a series of cases beginning with New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297. The Taylor case dealt with the application of the Federal Shop Book Rule to a hospital record containing an expression of opinion as to the existence of a psychoneurotic condition, a medical conclusion based on observation in a field where even very competent experts often disagree. It held that hospital records containing such an opinion were not admissible. This holding was distinguished, however, in Washington Coca-Cola Bottling Works, Inc. v. Tawney, 98 U.S.App.D.C. 151, 233 F.2d 353, which

1. Hospital records, evidenced by microfilm, were proffered, showing the admission in 1956 of one "Edward Moon" to a hospital where he was treated for cerebral thrombosis, shock and hypertension.

held that records containing observations of a physician of physical facts plain to the trained eye, such as compound fracture, or the presence of glass and fissures discovered during rectal examination, were admissible under the rule.

■ The records in the present case would have shown, if admitted, according to counsel for appellants, that in 1956 the patient was hospitalized for cerebral thrombosis and hypertension and that his articulation was not distinct. The records also contained statements dealing with other mere factual observations by the hospital staff. We do not believe that the diagnoses as to cerebral thrombosis and hypertension were so conjectural or of such complex technical character as to require cross-examination of the physician making them, unlike a case, such as Taylor, dealing with complex mental areas where doctors can and do come to disagreements over their opinions as to the diagnosis. With regard to the objection that the witness should not be allowed to testify because she did not make the entries, the rules are specifically designed to avoid the necessity of having to bring into court the person who made the entry. Records kept in the ordinary course of business offered by the person having custody of them are admissible. That is the purpose of the rule.

■ Even though otherwise admissible, however, such records must be germane and material to the issues of the case. Here, aside from the admission of appellants' counsel that he could not identify the "Edward Moon" admitted to Providence Hospital as a patient in 1956 as the same "Edward Moon" involved in the accident in 1961 and admitted to Casualty Hospital, there is a more cogent reason why the 1956 hospital records were not properly admissible, i. e., the lack of any relevancy of the 1956 hospital records to the issues that the trial court submitted to the jury. Appellants argue that appellee was negligent in employing Moon as a driver, knowing he was unfit for such employment, but this knowledge, or the lack of it, was neither shown during the trial nor submitted as an issue of fact to the jury under the court's instructions, and appellants claimed no error in the omission from the charge. We therefore hold that the exclusion of the 1956 hospital records was proper under all the circumstances and that no error occurred.

Affirmed.