**HOTEL CORPORATION OF AMERICA,**
**a corporation, Appellant,**

**v.**

**The TRAVELERS INDEMNITY COMPANY,**
**a corporation, Appellee.**

**No. 3954.**

District of Columbia Court of Appeals.

Submitted Feb. 13, 1967.

Decided April 19, 1967.

---

Sol Friedman, Leonard L. Lipshultz, Peter S. Taylor and Stephen H. Galt, Washington, D. C., for appellant.

John P. Diuguid, Washington, D. C., for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired).

HOOD, Chief Judge.

This appeal is from a judgment in favor of appellee insurance company for $4,000, the sum it had paid its insured, a Mrs. Glendenning, for the loss of her fur coat while she was a guest at appellant's hotel. Appellant urges reversal on two grounds.

First, it is argued that it was error to hold the hotel to the strict liability imposed by the common-law doctrine of infra hospitium [1] because, it is claimed, Mrs. Glendenning was not a guest of the hotel at the time of the loss. We disagree.

Mrs. Glendenning checked into the hotel on January 12, and remained a guest until

---

[1.] See Hallman v. Federal Parking Services, D.C.Mun.App., 134 A.2d 382 (1957). The common-law liability of an innkeeper is modified by our Code 1961, § 34–101, with respect to a guest's money, jewelry and other articles of value, other than wearing apparel. Obviously a coat is wearing apparel. In some jurisdictions the modifying statute includes fur coats. See Federal Ins. Co. v. Beverly Hills Hotel Corp., 202 Cal.App.2d 120, 20 Cal. Rptr. 502 (1962); Minneapolis Fire and Marine Ins. Co. v. Matson, 44 Hawaii 59, 352 P.2d 335 (1960).

January 16, working there as an official of an association holding a meeting at the hotel. The meeting was to conclude on the 16th and in the morning of that day Mrs. Glendenning went to the hotel desk and stated she was "checking out," but would leave her belongings in the room until 3:00 o'clock, the check-out time. She was told that this could be done. She signed her bill, charging it to the association, and returned to her work within the hotel. When she went to her room at 2:30 to get her belongings, she was unable to get her key into the lock because a portion of a broken key was in the lock. When a hotel employee was able to open the door, Mrs. Glendenning discovered that her fur coat and some other items were missing.

 We think it is clear that Mrs. Glendenning was still a guest of the hotel and that her belongings were in the custody of the hotel when the theft occurred. Her checking out in the morning amounted to nothing more than settling her account in advance of her departure. She and the hotel both understood that her belongings would remain in her room until sometime in the afternoon, possibly as late as three o'clock, the check-out time.

The second point is more troublesome. It relates to the proof of the value of the coat. Mrs. Glendenning described the coat as a "full length, natural ranch mink coat, approximately size 14," in excellent condition, and one which she had bought two years previously from a member of her family for $1,200, which she did not consider the full value of the coat. She also testified that approximately seven months before the loss she had had the coat appraised at $4,000 for insurance purposes. She did not give her own estimate of the value of the coat, as she might have done.[2]

The manager of a fur store testified that Mrs. Glendenning had brought the coat to the store for an appraisal for insurance purposes, that it had been appraised by an employee of the store, that she, the manager, then typed up the appraisal, signed it, and delivered it to Mrs. Glendenning. The manager, it would appear from the record, was probably qualified to testify as to the value of the coat from the description given and possibly from her recollection of seeing the coat, but she gave no estimate of the value. She merely testified to the making of the appraisal and identified the written appraisal. The employee of the store, who made the appraisal, was not a witness.

Over appellant's objection the written appraisal, showing the value of the coat to be $4,000, was received in evidence under the Federal Shop Book Rule,[3] and the trial court found as a fact that the value of the coat was $4,000 "as established by an appraisal which has been admitted in evidence."

 Thus, the only evidence in the case as to the value of the coat was the appraisal, and the question is whether it was properly admitted under the Federal Shop Book Rule. In general, that rule relies on the trustworthiness to be imputed to records which routinely reflect the day to day operations of a business.[4] The appraisal here in question was not a record kept in the regular course of business. When the appraisal was typed and signed by the manager, it was handed to Mrs. Glendenning who presumably delivered it to the insurance company. The fur store did not keep the appraisal, or even a copy of it, and made no charge for the appraisal.

Moreover, the appraisal did not reflect a routine business operation. It reflected the expert opinion of a furrier as to the value of the coat, and appellant was denied the right of cross-examination of the expert. This was not an instance in which competent experts would likely be in agree-

2. Glennon v. Travelers Indemnity Co., D.C. Mun.App., 91 A.2d 210, 37 A.L.R.2d 964 (1952).

3. 28 U.S.C.A. § 1732.

4. See Christensen v. Gammons, D.C.App., 197 A.2d 450 (1964).

ment [5] because there is no field in which experts more often disagree than in the field of valuation.[6]

■ As the amount of the judgment was based upon evidence we hold to have been improperly admitted, the judgment cannot stand.

Reversed with instructions to grant a new trial limited to the issue of damages.

---

5. Washington Coca-Cola Bottling Works v. Tawney, 98 U.S.App.D.C. 151, 233 F. 2d 353 (1956).

6. "Experts sometimes baffle us. In the expression of opinion they are not only given the privilege of a wide range, they usually exercise it." Chief Judge Marvin Jones, speaking for the United States Court of Claims in McNaught v. United States, 117 F.Supp. 420, 422, 127 Ct.Cl. 308 (1954).