**GROUP HOSPITALIZATION, INC.,**
**Appellant,**

v.

**Francis WESTLEY, Appellee.**

**No. 9287.**

District of Columbia Court of Appeals.

Argued Oct. 14, 1975.

Decided Jan. 22, 1976.

Charles J. Steele and Kevin W. Carmody, Washington, D.C., for appellant.

Margaret A. Beller, Washington, D.C., with whom Julia N. Nelson appeared on the brief, for appellee.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

KERN, Associate Judge:

Appellee is employed by the federal government and has so-called high option, family plan health insurance provided by appellant Group Hospitalization, Inc. [GHI].[1] Since 1966 appellee's wife has

---

1. The GHI health benefits contract in effect in 1971 provided benefits including coverage for:
   (i) services of a professional registered nurse (R.N.), and
   (ii) services of a licensed practical nurse under unusual circumstances and upon written certification of the attending physician that private duty nursing services are medically necessary. [Defendant's Ex. 9.]

been totally paralyzed on one side as the result of brain surgery and appellant has paid more than $43,000 in benefits to appellee.[2] In the fall of 1971, appellant advised appellee it would no longer reimburse him for the expense of a licensed practical nurse which he had over the years employed to care for his wife during each week day while he was at work. Consequently, appellee placed his wife in a nursing home, first in the District of Columbia and then in Maryland, and thereafter brought suit upon his policy in the trial court to recover the cost of this nursing home care for the period from October 1971 to September 1973,[3] amounting to about $6,000. The trial court concluded that the nursing care sought by appellee for his wife was "medically necessary" and therefore came within the terms of the contract. Taking into account the $50,000 maximum of benefits payable under the policy, the court awarded some $6,000 damages to appellee.

■ The ultimate issue presented is whether the trial court correctly construed the terms of the insurance policy. The specific question confronting us is whether care of appellee's wife by licensed nurses outside a hospital was "medically necessary" or required "the technical proficiency and professional skills of an R.N. or L. P.N." and thus was covered by the insur-

ance policy at issue. Since this is a mixed question of law and fact, the scope of our review is broad. *Group Hospitalization, Inc. v. Levin*, D.C.App., 305 A.2d 248 (1973); *see* D.C.Code 1973, § 17–305(a).

The evidence adduced at trial upon which appellee relies was (a) testimony by the physician attending appellee's wife, Dr. Delaney, that in his opinion there was a need for her to have the services of licensed nurses, and (b) oral and written evidence concerning the Montgomery County Health Department's decision that appellee's wife was entitled to care in a "skilled nursing home", *viz.*, a nursing home where "subprofessional" persons render direct service to patients *under the supervision of* registered or licensed nursing personnel.[4]

■ A close scrutiny of the evidence of record, which we are required to undertake by reason of our decision in *Group Hospitalization, Inc. v. Levin, supra*, persuades us that the court erred in concluding that licensed nursing care for appellee's wife was "medically necessary". Dr. Delaney rested his opinion that licensed nursing care at home was medically necessary upon the bases of her need, on a regular basis, for "range of motion" exercises to prevent contraction of the limbs and on the requirement that she be under observation for the medications she was taking. How-

The 1972 contract is identical. *See* Defendant's Ex. 8.
The 1973 contract provided coverage for:
(7) Services of an actively practicing, professional registered nurse (R.N.) or licensed practical nurse (L.P.N.), provided that the care is ordered by the attending physician, [and] requires the technical proficiency and professional skills of an R.N. or L.P.N., as the case may be . . . . [Defendant's Ex. 10.]
In addition, each contract contained a specific clause excluding from coverage:
(p) Services of a special nurse which do not require the skills of a professionally-trained nurse but consist primarily of services such as bathing, feeding, exercising or entertaining the patient; giving medication, or acting as a companion or sitter. [Defendant's Ex. 8, 9; *see* Defendant's Ex. 10.]

For purposes of this opinion, we treat all three contracts as providing the same coverage in different language. *See* appellee's brief at 9.
2. It is undisputed that the maximum amount payable under the policy is $50,000.
3. Appellee and his wife were divorced in October 1973. (Finding of Fact No. 3). Appellee's complaint, however, claims that he is entitled to reimbursement for expenses incurred only until September 14, 1973.

4. Appellee's wife was deemed ineligible for funding by the county for her nursing home stay because appellee's income level was too high.

ever, he further testified that for about one year of the two years in question here she was *not* under his care, he did *not* know whether she needed nursing care and he did *not* order private nursing for her, and for the other year in question, when he was seeing her once a month, she was unable to tolerate the exercise he had earlier stated she needed. Moreover, Dr. Delaney admitted that someone with less training than a registered nurse or licensed practical nurse could have observed her vital signs, administered her medications and supervised her range of motion exercises.[5] Dr. Delaney's testimony then, reflects a preference rather than an absolute need for licensed nursing care. In addition, the needs of Mrs. Westley for exercise, administration of medication and observation, upon which he based his recommendation, fall within the range of services specifically excluded from coverage by the policy. *See* note 1, *supra*.

We also have serious reservations about the trial court's reliance upon the conclusions of the Montgomery County Health Department. The trial court admitted into evidence over appellant's objection both the county's written report and oral testimony concerning the records by a member of the Department who testified at trial that a county physician had made the decision based upon his review of appellee's application and a report by Dr. Delaney. This decision, as we have described above, was that the condition of appellee's wife entitled her to admission to a nursing home in Maryland where nonlicensed persons would care for her under the supervision of registered or licensed nurses.

In the first place, we view as error the trial court's admission into evidence of the county's decision under the so-called business records exception to the hearsay rule.[6] The witness who appeared was relating an opinion in the nature of a diagnosis by the county physician, rather than a medical fact or occurrence performed routinely, the accuracy of which is unaffected by bias, judgment, and memory. As the Circuit Court noted in *New York Life Ins. Co. v. Taylor*, 79 U.S.App.D.C. 66, 72–73, 147 F.2d 297, 303–04 (1945):

> The records offered here are not the kind of entries which are admissible under the established principles of the Shop Book exception to the hearsay rule. Such records must be those which are a product of routine procedure and whose accuracy is substantially guaranteed by the fact that the record is an automatic reflection of observations. This obviously excludes those which depend on opinion or conjecture. . . .
>
> The diagnosis of a psychoneurotic state involves conjecture and opinion. It must, therefore, be subjected to the safeguard of cross-examination of the physician who makes it. [Footnotes omitted.]

Like the records in *Taylor*, the county's decision here involves an opinion of a doctor who did not testify and was not subject to cross-examination, and therefore the evidence should have been excluded.

In addition, the county's decision to approve appellee's wife for a state-funded nursing home where non-licensed personnel would render service to the patients undercuts the trial court's conclusion that it was "medically necessary" that appellee's wife receive licensed nursing care. In fact the trial court judge noted that the county's decision "is not quite the same [issue] as what we have here to decide." Since the standards used by Montgomery County to determine that Mrs. Westley was eligible

---

5. Indeed, the record reflects that appellee's wife lived in several "personal care" homes, rather than in her own home, and licensed nurses were not always present in these particular homes during her stays there.

6. *See* 28 U.S.C. § 1732 (1970); McCormick, Evidence §§ 306–313 (2d ed. 1972).

for "skilled nursing care" differ from the requirement in the three Group Hospitalization contracts that nursing services be "medically necessary" or require "the technical proficiency and professional skills of an R.N. or L.P.N.," this evidence was irrelevant and cannot be used to support the trial court's finding that nursing care for Mrs. Westley was "medically necessary."

We conclude after review of the record that upon the particular facts and circumstances here the trial court erred in ruling that appellee was entitled to be reimbursed by appellant for nursing care for his wife, since such care was not medically necessary within the meaning of the insurance policy. The services provided for Mrs. Westley consisted of exercising, giving medication, and acting as a companion or a sitter, rather than services intended "to shorten and relieve an ordeal of agonizing pain and thereby effectuate the most rapid recovery possible . . .." *Group Hospitalization, Inc. v. Levin, supra,* at 250. These services were specifically excluded by the contract, and are not medically necessary. Accordingly, the judgment must be reversed.

*So ordered.*