Faith ADKINS, et al., Appellants,

v.

Christanna MORTON, et al., Appellees.

No. 84–52.

District of Columbia Court of Appeals.
Argued Sept. 19, 1984.
Decided June 19, 1985.

---

William J. Carter, Washington, D.C., with whom Lawrence E. Carr, Jr. and Joseph Montedonico, Washington, D.C., were on the briefs, for the appellants.

Barry J. Nace, Bethesda, Md., for appellees.

Before FERREN and BELSON, Associate Judges, and GALLAGHER, Associate Judge, Retired.

BELSON, Associate Judge:

This is an appeal by a physician and a hospital from a medical malpractice judgment. They challenge the trial court's rulings excluding certain testimony from two treating physicians whom appellants did not list during the discovery process as expert witnesses pursuant to Super.Ct. Civ.R. 26(b)(4). We hold that testimony comprising facts and opinions one physician acquired as an "actor or viewer" should have been admitted on the issue of damages. We further hold that opinion testimony from the other physician on the question of causation was cumulative of other evidence presented on that question and therefore was properly excludable. Accordingly, we affirm as to liability but reverse the award of damages and remand for a new trial on that issue.

I

Ms. Christanna Morton entered George Washington University Hospital (G.W.U. Hospital) in July 1975, to undergo elective open heart surgery for the repair of a congenital defect. Appellant's decedent, Paul C. Adkins, M.D., led the surgical team that performed the operation.[1] Thirteen hours after the operation, attending nurses noted that Ms. Morton was unable to move her arms and legs. A neurologist's examination revealed that she was exhibiting quadriplegia resulting from a blockage in the artery that normally supplied blood to her spinal cord. Doctors concluded upon subsequent examination that her paralysis and muscular weakness are permanent.

Appellees, Ms. Morton and her husband, Mr. Hugo C. Morton, instituted this action in Superior Court seeking damages for medical malpractice. Their complaint named as defendants Paul C. Adkins, M.D., George Washington University[2] and Alice

---

1. Dr. Adkins died during the pendency of this case. His widow was substituted as his representative on behalf of his estate.

2. Appellant, George Washington University, is a corporation doing business, *inter alia,* as George Washington University Hospital.

Alstatt, M.D., who had been the anesthesiologist for the operation. At the trial in November 1981, the court granted a directed verdict on behalf of Dr. Alstatt. As to the other defendants, however, the jury was unable to reach a verdict and a mistrial was declared. A second trial was commenced in June 1983. The jury returned a verdict on behalf of the Mortons in the amount of $2,734,000. This appeal followed.[3]

The principal issue on appeal concerns the exclusion of certain testimony from two of Ms. Morton's attending physicians: Dr. Rodney L. Ellis and Dr. Thomas Street. Because appellants' claims as to the two doctors present discrete questions for our resolution, we address each in turn, beginning with the claim regarding the excluded testimony of Dr. Ellis.

## II

Dr. Ellis is an internist who treated Ms. Morton following her release from G.W.U. Hospital. He testified as a defense witness at trial that he had not ordered, and that Ms. Morton had not received, full-time nursing care at home. The court refused, however, to allow Dr. Ellis to explain why he had not ordered such treatment up to and including the time of trial, nor to testify whether Ms. Morton would require home nursing care in the future. The court sustained the Mortons' objection to such testimony on the grounds that the appellants had failed to list Dr. Ellis as an expert witness and to summarize his testimony in response to a Super.Ct.Civ.R. 26(b)(4) interrogatory.

Appellants contend that the trial judge abused his discretion in excluding the testimony. They argue that Dr. Ellis was not an expert witness within the meaning of Rule 26(b)(4) and that they therefore were not required to list his name in their Rule 26(b) information. We agree.

Super.Ct.Civ.R. 26(b)(4) regulates discovery of facts known to and opinions held by an adversary's expert.[4] By its terms, the rule applies only to facts and opinions "acquired or developed in anticipation of litigation or for trial." Super.Ct. Civ.R. 26(b)(4). The rule was adopted from the identically worded Fed.R.Civ.P. 26(b)(4),[5] which the Advisory Committee for the federal rules significantly noted:

3. All further references to the trial court or to the trial shall mean the second court and trial, respectively.

4. In relevant part Super.Ct.Civ.R. 26(b)(4) provides:

> (4) Trial preparations: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this Rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
> (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the Court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this Rule, concerning fees and expenses as the Court may deem appropriate.
> (B) A party may discover facts known or opinions held by an expert who has been

retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

5. Congress has mandated the Federal Rules of Civil Procedure for use in the Superior Court unless they are modified through prescribed procedures. D.C.Code § 11–946 (1981); *Varela v. Hi-Lo Powered Stirrups, Inc.,* 424 A.2d 61, 62–64 (D.C.1980) (en banc); *Rieser v. District of Columbia,* 188 U.S.App.D.C. 384, 394, 580 F.2d 647, 657 (1978) (en banc). "[W]e construe the rules of the Superior Court in light of the meaning of the corresponding federal rules, insofar as such interpretation is not contrary to binding precedent." *Wallace v. Warehouse Employees Union No. 730,* 482 A.2d 801, 807 (D.C.1984). In so doing we may look for guidance both in the advisory committee notes to the Federal Rules of Civil Procedure, *id.,* and in federal court decisions interpreting the federal rules, *Gold-*

does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

Fed.R.Civ.P. 26(b)(4) advisory committee note (1970). Courts and commentators now widely recognize the distinction between those experts whose knowledge and views lie within the ambit of Rule 26(b)(4) and those whose do not. *E.g., Marine Petroleum Co. v. Champlin Petroleum Co.*, 206 U.S.App.D.C. 31, 641 F.2d 984 (D.C.Cir. 1979); *Grinnell Corp. v. Hackett,* 70 F.R.D. 326 (D.R.I.1976); *accord, In re Application for Water Rights v. Northern Colorado Water Conservancy Dist.,* 677 P.2d 320 (Colo.1984) (en banc) (Colo.R. Civ.P. 26(b)(4)); *see also Teen-Ed, Inc. v. Kimball International, Inc.,* 620 F.2d 399 (3d Cir.1980) (holding that plaintiff's accountant, whom trial court had prohibited from testifying about damages in breach of contract action because plaintiff had not identified him as an expert witness in Fed. R.Civ.P. 26(b)(4) response, should have been allowed to testify pursuant to Fed.R. Evid. 701 as ordinary witness on basis of knowledge of plaintiff's records acquired in his capacity as plaintiff's accountant). *See generally,* 4 J. Moore, J. Lucas & G. Grotheer, MOORE'S FEDERAL PRACTICE ¶ 26.66[2] (2d ed. 1984); 8 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2033 at 257–58, & n. 90 (1970 & Supp.1983); 33 Annot.A.L.R.Fed. 403, § 6 (1977). In making this distinction, the crucial inquiry is whether the facts and opinions possessed by the expert were obtained for the specific purpose of preparing for the litigation in question; if so, Rule 26(b)(4) governs their discovery. *Grinnell, 70 F.R.D. at 332; see Marine Petroleum Co.,* 206 U.S.App.D.C. at 39 n. 47, 641 F.2d at 992 n. 47; *Frantz v. Golebiewski,* 407 So.2d 283, 285 (Fla.Dist. Ct.App.1981).

*kind v. Snider Brothers, Inc.,* 467 A.2d 468, 472

■ Professionals and practitioners over a broad range of specialties whose knowledge and views were acquired as participants in or as witnesses to occurrences in dispute have been ruled not to be experts for purposes of discovery under Rule 26(b)(4). *See, e.g., Leviathan, Inc. v. M/S Alaska Maru,* 86 F.R.D. 8 (W.D.Wash. 1979) (ship's captain); *Nelco Corp. v. Slater Electric Inc.,* 80 F.R.D. 411 (E.D.N.Y. 1978) (electrical inventor); *In re Brown Co. Securities Litigation,* 54 F.R.D. 384 (E.D. La.1972) (financial investment experts); *Duke Gardens Foundation, Inc. v. Universal Restoration, Inc.,* 52 F.R.D. 365 (S.D.N.Y.1971) (greenhouse construction and maintenance technicians). The practice with respect to physicians has not been to the contrary. Insofar as a physician obtains and develops his information and opinions in the course of his treatment of a patient, he becomes an "actor or viewer" who should be treated as an ordinary witness rather than as an expert covered under Rule 26(b)(4). *See Frantz,* 407 So.2d 283 (Fla.R.Civ.P. 1.280—which is identical in all material respects to Fed.R.Civ.P. 26(b)(4)—inapplicable to treating dentist); *cf. Harasimowicz v. McAllister,* 78 F.R.D. 319 (E.D.Pa.1978) (Rule 26(b)(4) inapplicable to medical examiner who developed opinion by conducting autopsy pursuant to statutory mandate rather than in anticipation of litigation); *Congrove v. St. Louis-San Francisco Railway Co.,* 77 F.R.D. 503 (W.D.Mo.1978) (Rule 26(b)(4) inapplicable to defendant's medical consultant who rendered medical judgment in connection with suit in issue); *Rodrigues v. Hrinda,* 56 F.R.D. 11 (W.D.Pa.1972) (Rule 26(b)(4) inapplicable to physician-defendants in medical malpractice action). The reason is not difficult to discern:

> In contrast to an "examining physician" [whose facts and opinions are acquired and developed with an eye towards litigation], a treating doctor ..., while unquestionably an expert, does not acquire his expert knowledge for the purpose of liti-

(D.C.1983).

gation but rather simply in the course of attempting to make his patient well. *Frantz,* 407 So.2d at 285.

This court recently ruled for the first time that a treating physician is not an expert within the meaning of Super.Ct. Civ.R. 26(b)(4). In *Abbey v. Jackson,* 483 A.2d 330 (D.C.1984),[6] appellant underwent an abortion at a clinic and was later treated for complications at a hospital. *Id.* at 331. Appellant filed a complaint against the owners/operators of the clinic alleging negligence in two counts: 1) negligent nondisclosure of information pertinent to appellant's consent to the procedure, and 2) negligent infliction of emotional distress. *Id.* The pretrial statement of the appellees listed as potential witnesses the physician who performed the abortion and the physician who treated appellant at the hospital. *Id.* at 331–32. Appellant's pretrial statement listed as potential witnesses the parties and all witnesses identified by defendants. The trial court granted appellees' motion for summary judgment on the first count on the grounds that appellant, having not filed a Rule 26(b)(4) statement, would be unable to establish what risks the abortion procedure entailed, and thus could not establish a prima facie case on the theory of lack of informed consent. We reversed, ruling, in part, that appellant was not required to list the defense witnesses as experts on a Rule 26(b)(4) statement. Relying on the language of Rule 26(b)(4) and the corresponding advisory committee note, we reasoned that the physicians listed by the appellees as ordinary witnesses—*i.e.,* the physician who performed the abortion and the one who treated her later—"were participants in the events leading to this lawsuit. Moreover, their expertise regarding risks in abortion procedures was not developed in anticipation of litigation. Thus, appellant

was not required to list them on a 26(b)(4) statement." *Abbey,* 483 A.2d at 335.

■■■ We believe that our ruling in *Abbey* controls the disposition of appellants' claim regarding the exclusion of Dr. Ellis' testimony about why he had not ordered 24 hour-a-day home nursing care for Ms. Morton in the past and why he believed she would not need such care in the future. That testimony comprised knowledge and views derived not in anticipation of litigation or for trial but rather in the course of his treatment of Ms. Morton, for the purpose of providing her medical care. Tracking the language of the Fed.R.Civ.P. 26(b)(4) advisory committee note, we hold that Dr. Ellis' treatment of Ms. Morton was a "transaction" as to which he was an "actor" and that Ms. Morton's rehabilitation was an "occurrence" with respect to which he was a "viewer." His treatment and her rehabilitation "are part of the subject matter of the lawsuit," because they are central to the question of damages.[7] It follows that Dr. Ellis was not an expert for purposes of discovery under Rule 26(b)(4) and appellants were not obliged to list him as one in their response to appellees' Rule 26(b)(4) interrogatory. In the status of actor and viewer Dr. Ellis was eligible to testify not only about what his course of treatment for Ms. Morton had been but also about the reasons he had not ordered home nursing care and about his opinion as to why she would not need such care. *See Rodrigues,* 56 F.R.D. at 14. The trial court erroneously disallowed appellants from eliciting the latter testimony.

■■■ The exclusion of this portion of Dr. Ellis' testimony can hardly be said to have been harmless. It caused substantial prejudice to appellants by hampering their abil-

---

**6.** Our decision in *Abbey* postdated oral argument in the case at bar.

**7.** In cases where an expert is an "actor or viewer" we perceive no persuasive reason to distinguish between "transactions or occurrences" relevant to the issue of liability and those that go to the issue of damages. *See Teen-Ed, Inc.,* 620

F.2d 399 (in breach of contract action in which defendant found liable, plaintiff's accountant, who plaintiff failed to identify as expert witness in Fed.R.Civ.P. 26(b)(4) information, should have been permitted to testify as ordinary witness about calculations showing plaintiff's damages).

ity to rebut the evidence introduced by appellees at trial indicating Ms. Morton's need for nursing care. One of appellees' medical expert witnesses testified that in his opinion Ms. Morton would require 24-hour-a-day nursing care. Appellees' economics expert testified that the total cost of such care, reduced to its present value, would be $2,436,926. The jury ultimately awarded Ms. Morton $2,500,000 in damages.[8] Given that the parties stipulated Ms. Morton's medical costs to be between $50,000 and $100,000, it is not unreasonable to infer that the cost estimate of nursing care constituted a substantial part of the total damage award. Had Dr. Ellis been allowed to testify as to his reasons for not prescribing home nursing care for Ms. Morton, the jury might well have been inclined to award her a lesser amount of damages.

Dr. Ellis' statement that he had not ordered nursing care, standing alone, was insufficient to counteract effectively the testimony of appellees' experts on this issue. The jury might have inferred from Dr. Ellis' statement that Ms. Morton did not need home nursing care. But it is just as likely that they drew other inferences; for example, that Dr. Ellis did not think Ms. Morton could afford home nursing care or that her health insurer was reluctant to pay for it. Since the jury had heard the testimony of Ms. Morton's experts as to why she needed home nursing care, in fairness it should also have heard Dr. Ellis—her treating physician—testify about why she did not.

 ■ Appellees cannot validly complain of surprise. Appellants' Rule 26(b) information, while not specifically including Dr. Ellis among the expert witnesses listed, explicitly stated that "[t]he Defendants reserve the right to call as witness all physicians and surgeons who have rendered care and treatment to the female Plaintiff." In

their pretrial statement, appellants specifically listed Dr. Ellis among the witnesses who they reserved the right to call at trial. The trial court adopted by reference the parties' witness lists in its pretrial order.[9] Under the circumstances, appellees knew that Dr. Ellis might be called to testify; indeed, he had testified at the first trial. Certainly appellees were aware that Dr. Ellis had not ordered round-the-clock nursing care for Ms. Morton. They were free to obtain discovery concerning his treatment by means of deposition or interrogatories addressed to the appellants, as with any factual witness. Since they did not exercise this prerogative we deem any asserted surprise to have been largely self-induced.

We therefore conclude that the trial court erred in prohibiting Dr. Ellis from testifying about why he had not ordered home nursing care for Ms. Morton and about why she would not need such care. We further conclude that the error seriously prejudiced appellants. Accordingly, we reverse the judgment as to damages and remand for retrial on that issue alone.

### III

Appellants also assign as error the trial court's refusal to allow testimony from Dr. Street about the cause of Ms. Morton's condition. Dr. Street was a resident physician in general surgery at G.W.U. Hospital who participated in her treatment there and who assisted in her surgery. He had testified in deposition that, in his opinion, thrombosis had caused Ms. Morton's paralysis.[10] Before trial appellants listed Dr. Street in their Rule 26(b) statement. He was described as a factual witness who would testify about his observations of Ms. Morton's medical treatment. He was also described as a surgeon who might testify

---

**8.** An additional $234,000 was awarded to Mr. Morton.

**9.** We have no doubt that the pretrial order could have required the parties to supply one another not only the names of all witnesses, but also

summaries of their expected testimony, regardless of whether Rule 26(b)(4) interrogatories required such disclosure.

**10.** *See infra* note 11.

as to his opinion, first, about whether the physicians who participated in Ms. Morton's surgery acted in accordance with accepted standards of good surgical practice, and second, about the cause of Ms. Morton's paralysis. In a supplement to their Rule 26(b) information, however, appellants indicated only that Dr. Street would testify factually about what happened when he treated Ms. Morton during her hospitalization and about the quality of the services rendered her there. Moreover, appellants characterized the contents of the supplement as "an amendment to Defendants' Answers to Interrogatories," pursuant to correspondence with the Mortons' trial counsel. Finally, Dr. Street was listed in appellants' pretrial statement as one of the witnesses appellants reserved the right to call during trial.

In the course of trial, appellants requested permission either to present the portion of Dr. Street's deposition in which he testified to his opinion concerning causation or, in the alternative, to present him as a live witness. The trial court denied the request. In so ruling, the court explained that it would have been fundamentally unfair to the Mortons for appellants to have represented during discovery that Dr. Street would testify as to certain issues (*i.e.*, his observations of Ms. Morton's treatment and his assessment about whether attending physicians complied with applicable standards of care), and then, without further notice to the Mortons, to elicit from Dr. Street at trial testimony on another issue (*i.e.*, the cause of Ms. Morton's paralysis). Appellants now contend that since Dr. Street's opinion about causation came to light in his deposition, his testimony on this issue would not have been so surprising as to warrant its exclusion.

We note that, inasmuch as Dr. Street participated in Ms. Morton's medical treatment and in her surgery, he was an actor or viewer whom appellants were not required to list as an expert witness in their Rule 26(b) information. *See* Part II of this opinion. We observe as well, however, that experts—including those who are actors or viewers—may be barred from testifying at trial about certain matters if, during the discovery process, there has been a disavowal that such testimony would be elicited. This court will not countenance the use of actors or viewers in a manner that contravenes what we have deemed to be one of the fundamental policies underlying the discovery rules: prevention of unfair surprise at trial. *See Corley v. BP Oil Corp.*, 402 A.2d 1258, 1262 (D.C.1979). *See generally* 4 J. Moore, J. Lucas, G. Grotheer, MOORE'S FEDERAL PRACTICE ¶ 26.01[1], [2] (2d ed. 1984); 8 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2001 (1970).

We need not decide here whether appellants did, in effect, disavow calling Dr. Street to testify about causation. Nor need we decide whether the Mortons would have been unfairly surprised by the admission of such testimony. Rather, we rule that in any event the exclusion of his opinion testimony worked no appreciable prejudice on appellants and thus, even if assumed to be erroneous, was harmless. D.C.Code § 11–721(e) (1981); *see Guaranty Development Co. v. Liberstein*, 83 A.2d 669, 671 (D.C.1951).

Although Dr. Street's proffered opinion testimony undoubtedly would have been relevant to the issue of causation, it also would have been cumulative of other evidence presented on this issue. At trial, appellants called several witnesses and introduced documentary evidence to rebut the Mortons' theory of causation.[11]

---

**11.** The Mortons' theory at trial was that Dr. Adkins breached the applicable standard of care with respect to removal of air from Ms. Morton's heart. Assertedly, his negligence caused air to remain in Ms. Morton's heart following her surgery. The air migrated to the anterior spinal artery and created an embolism there. Embolism is defined as "the sudden blocking of an artery by a clot or foreign material which has been brought to its site of lodgment by the blood current." *Dorland's Illustrated Medical Dictionary* 431 (26th ed. 1981). The embolism

Among those testifying was Dr. David Alford, who was a member, along with Drs. Street and Adkins, of the team of surgeons that operated on Ms. Morton's heart.[12] Dr. Alford testified to his opinion that Ms. Morton's paralysis was caused by thrombosis and not, as appellees asserted, by an air embolism. *See supra* note 11. Another participant in Ms. Morton's surgery—Dr. Alice Alstatt, the anesthesiologist—testified at trial that thrombosis had caused the paralysis. So did two of appellants' expert witnesses—Dr. Charles Epps, an orthopedic surgeon, and Dr. Harvey H. Ammerman, a neurosurgeon. Two of appellants' other expert witnesses—Dr. Mitchell Mills and Dr. Robert L. Simmons, both cardiovascular surgeons—testified that thrombosis was one of the likely causes of Ms. Morton's injury. Additionally, the trial court admitted into evidence the discharge summary of Ms. Morton which Dr. Adkins had prepared and which identified thrombosis as the causative agent.

■■■ In light of all the evidence introduced by appellants on the issue of causation, Dr. Street's proffered testimony would have been merely duplicative and superfluous. Under these circumstances, it would not have been an abuse of discretion for the trial court to exclude that testimony on the grounds that it would have been cumulative. *See Manbeck v. Ostrowski,* 128 U.S.App.D.C. 1, 3–4, 384 F.2d 970, 972–73 (1967), *cert. denied,* 390 U.S. 966, 88 S.Ct. 1077, 19 L.Ed.2d 1170 (1968); *Washington Times Co. v. Bonner,* 66 App. D.C. 280, 290, 86 F.2d 836, 846 (1936);

*Campbell v. District of Columbia,* 64 App. D.C. 375, 379, 78 F.2d 725, 729 (1935); *see also Rink v. United States,* 388 A.2d 52, 57 (D.C.1978) (criminal case); *In re Bumphus,* 254 A.2d 400, 401 (D.C.1969) (same). *See generally* 6 J. WIGMORE EVIDENCE §§ 1907, 1908 (Chadbourn rev. 1976). Appellants have failed to demonstrate that they were prejudiced by the exclusion of evidence that was not otherwise introduced at trial in at least a substantially similar form. We conclude that the trial court committed no reversible error in excluding Dr. Street's causation testimony.

### IV

We dispose of appellants' further arguments without extensive discussion.

■■■ First, appellants contend that the trial court erred in refusing to admit into evidence under Super.Ct.Civ.R. 43–I(a) (business records exception) certain medical records of Ms. Morton. The records contained references to thrombosis as the cause of her injury. Those references lent support to appellants' theory that the injury was caused by a pre-existing medical condition and not by appellants' negligence. *See supra* note 11. The court refused to admit the records on the grounds that they contained opinion. We perceive no error in the court's ruling. We look for guidance to *New York Life Insurance Co. v. Taylor,* 79 U.S.App.D.C. 66, 147 F.2d 297 (1945) (interpreting a statutory precursor of Super.Ct.Civ.R. 43–I(a)), and its progeny, *e.g., Gass v. United States,* 135 U.S.App.D.C. 11, 15 n. 17, 416 F.2d 767, 771 n. 17 (1969);

---

obstructed the flow of blood to Ms. Morton's spinal cord, causing the nerve tissue to die and ultimately resulting in her paralysis.

Appellants' opposing theory was that the occlusion in Ms. Morton's anterior spinal artery was caused not by an air embolism but rather by something else, such as spasm induced by the stress of surgery, anatomically unstable circulation, or thrombosis. Thrombosis is "the formation, development, or presence of a thrombus," *id.* at 1365, which, in turn, is defined as "an aggregation of blood factors ... frequently causing vascular obstruction at the point of its formation." *Id.* Some of appellants' experts

testified that arteriosclerotic narrowing of the arteries probably contributed to the occlusion. None of these asserted causes put forward by appellants would have been attributable to the treatment rendered by G.W.U. Hospital or to the surgical procedures performed by Dr. Adkins.

12. Dr. Adkins was in charge of the team and performed the principal surgical operations. His first assistant was Dr. Alford, a resident in thoracic surgery who had completed his general surgery residency. Dr. Street participated in the surgery as second assistant. At that time, he was a fourth year resident in general surgery.

*Group Hospitalization, Inc. v. Westley,* 350 A.2d 745, 747 (D.C.1976). Those cases distinguish hospital records that are admissible because they reflect medical facts and routinely performed procedures, from records rendered inadmissible by dint of the conjecture or opinion they contain. The test for admissibility is whether the records are composed solely of "[r]egularly recorded facts as to the patient's condition or treatment on which the observations of competent physicians would not differ...." *New York Life Insurance Co.,* 79 U.S.App. D.C. at 72, 147 F.2d at 303; *accord Smith v. United States,* 337 A.2d 219, 223 (D.C. 1975); *Washington Coca-Cola Bottling Works, Inc. v. Tawney,* 98 U.S.App.D.C. 151, 152, 233 F.2d 353, 354 (1956).

The hospital records proffered by appellants in the instant case do not survive this test. Causation was one of the most vigorously contested issues at trial. Not even appellants' own medical expert witnesses could agree on the precise etiology of Ms. Morton's condition. For this reason, appellants' reliance on *Christensen v. Gammons,* 197 A.2d 450 (D.C.1964) (hospital records containing diagnosis of cerebral thrombosis and hypertension ruled admissible), is misplaced. Our explanation of our holding there clearly distinguishes that case from the one at bar:

> We do not believe that the diagnoses as to cerebral thrombosis and hypertension were so conjectural or of such complex technical character as to require cross-examination of the physician making them, unlike a case ... where doctors can and do come to disagreements over their opinions as to the diagnosis.

*Id.* at 453.

Second, appellants complain that the trial court erroneously allowed appellees to "raise the spectre of insurance before the jury" by asking Dr. Harvey Ammerman, one of appellants' medical experts, some questions about his involvement with a certain medical malpractice insurance company that had no interest in this case. Appellants submit that the testimony thus elicit-

ed was irrelevant and that the prejudice it created outweighed its probative value.

In our view this argument is unconvincing. Appellees initially proffered the questions in issue at a bench conference. The questions were designed to create an inference of Dr. Ammerman's bias. Appellants objected. There followed extensive discussion at the bench resulting in a reformulation of the questions which appellants approved. Appellants declined the judge's offer to give a cautionary jury instruction. Appellees then asked Dr. Ammerman the questions as approved. Having failed to object—indeed, having assented—to the questions in issue, appellants cannot now be heard to complain for the first time on appeal, *D.C. Transit System, Inc. v. Milton,* 250 A.2d 549, 550 (D.C. 1969); *ABCD Corp. v. Henry,* 109 A.2d 133, 134 (D.C.1954), absent a manifest miscarriage of justice, *Scoggins v. Jude,* 419 A.2d 999, 1002 (D.C.1980); *District Hauling & Construction Co. v. Argerakis,* 34 A.2d 31, 32 (D.C.1943); *see also Dart Drug, Inc. v. Linthicum,* 300 A.2d 442, 445 (D.C.1973) (invoking doctrine of plain error); 1 J. Wigmore, *Evidence* § 18, at 794–96 (Tillers rev. 1983) ("The plain error rule is nominally applicable in civil actions, but a claim of plain error made in a civil action is rarely sustained."). We perceive no injustice, manifest or otherwise, to have been spawned by the cross-examination of Dr. Ammerman. In a negligence action, evidence that the defendant is insured against his negligence is ordinarily inadmissible. *Parks v. Ratcliff,* 240 A.2d 659, 660 (D.C. 1968). "Such evidence, however, may be admitted where it is material as tending to establish an incidental fact in issue, as for the purpose of showing the interest or bias of a witness as agent of an insurance company." *Paxson v. Davis,* 62 App.D.C. 146, 149, 65 F.2d 492, 495, *cert. denied,* 290 U.S. 643, 54 S.Ct. 61, 78 L.Ed. 558 (1933); *Brooke v. Croson,* 61 App.D.C. 159, 160, 58 F.2d 885, 886 (1932). Here, the trial court properly permitted questions that elicited testimony that was probative of Dr. Am-

merman's potential bias but raised no more than a remote prejudicial inference that appellants were insured.

▇ Third, appellants dispute whether the evidence was sufficient to permit the case to be submitted to the jury or to sustain the jury's verdict. They maintain that the trial court should have granted their motion for directed verdict or their motions either for judgment notwithstanding the verdict or for a new trial. We hold that the trial court properly denied all of these motions. As to the motions for directed verdict and for judgment n.o.v. we do not agree with appellants, after viewing the evidence in the light most favorable to appellees, *Meek v. Shepard*, 484 A.2d 579, 581 n. 5 (D.C.1984), that "the evidence is so clear that reasonable men could reach but one opinion." *Vuitch v. Furr*, 482 A.2d 811, 813–14 (D.C.1984) (citations omitted) (directed verdict); *Rich v. District of Columbia*, 410 A.2d 528, 532 (D.C.1979) (judgment n.o.v.). Nor do we find any abuse of discretion in the trial court's denial of the motion for new trial. *See Bell v. Westinghouse Electric Corp.*, 483 A.2d 324, 327 (D.C.1984); *Rich*, 410 A.2d at 534–36.

▇ Finally, appellants contend that the trial court erred by allowing one of appellees' medical experts to testify as a rebuttal witness. During the introduction of appellees' case-in-chief, the testimony of Dr. Stansel was presented on videotape to the jury because he was purportedly too ill to travel from his home in Connecticut. But at the close of appellants' case, appellees produced Dr. Stansel as a live rebuttal witness. Appellants argue that this turn of events surprised them and prejudiced their ability to meet Dr. Stansel's rebuttal testimony. We are unpersuaded by this contention. The prejudice appellants assert they suffered derives from the fact that their trial counsel, not anticipating that Dr. Stansel would testify, had returned to his office the file containing Dr. Stansel's deposition testimony and thereby felt ill-prepared to cross-examine him. The record discloses, however, that shortly after Dr. Stansel commenced his rebuttal testimony the trial court called a lengthy lunch break which provided counsel ample opportunity to retrieve his files. We conclude that the trial court, in allowing Dr. Stansel's rebuttal testimony, soundly exercised its considerable discretion in such matters. *See L.C.D. v. D.C. ex rel. T.A. N.D.*, 488 A.2d 918, 922 (D.C.1985) (admission of expert testimony); *Birmingham v. Pettit & Dripps*, 21 D.C. (Tuck & Cl.) 209, 216–17 (D.C.1892) (admission of rebuttal testimony); *Guaranty Development Co., Inc. v. Liberstein*, 83 A.2d 669, 671 (D.C. 1951) (conduct of trial).

## V

In light of our ruling that there was no prejudicial error in the exclusion of Dr. Street's testimony about causation, and our disposition of the matters addressed in Part IV of this opinion, we affirm the judgment insofar as it imposes liability on appellants. With respect to the amount of damages, however, the judgment is reversed because of the erroneous exclusion of Dr. Ellis' testimony about Ms. Morton's need for home nursing care. Accordingly, we remand this case for further proceedings consistent with this opinion.

*So ordered.*