Jerome D. **DOCKERY,** Appellant,

v.

**UNITED STATES,** Appellee.

No. 98–CF–1585.

District of Columbia Court of Appeals.

Submitted Jan. 18, 2000.

Decided Feb. 10, 2000.

---

304

Camille M. Weithers, filed a brief for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth H. Danello, and Anita La Rue, Assistant United States Attorneys, filed a brief for appellee.

Before SCHWELB and REID, Associate Judges, and KERN, Senior Judge.

SCHWELB, Associate Judge:

Jerome D. Dockery was convicted by a jury of carrying a pistol without a license (CPWOL), D.C.Code § 22-3204(a) (1996), and of two other weapons offenses.[1] On appeal, he contends that the trial judge erred by excluding allegedly exculpatory hospital records. We agree and reverse.

1. *See* D.C.Code § 6-2311 (1995) (possession of an unregistered firearm); § 6-2361(3) (possession of ammunition for an unregistered firearm).

## I.

### THE FACTS

A. *The case for the prosecution.*

At Dockery's trial, Officer Chevelle Tilghman of the Metropolitan Police Department testified that at approximately midnight on the night of August 22–23, 1997, she observed a Ford Tempo run a red light at an intersection in northeast Washington, D.C. Officer Tilghman activated her emergency lights and sirens, but the driver of the Ford did not pull over. Instead, he sped away.

Officer Tilghman related that she deactivated the emergency equipment and followed the Ford Tempo. As she did so, she saw a right hand and forearm appear out of the window on the passenger side. As the hand came into view, an object flew out of its grasp. The officer was unable to discern what the discarded item was, but she suspected that it might be a handgun. According to Officer Tilghman, the driver of the Ford did not lean to the right at the time the object was discarded. Officer Tilghman therefore believed that it was the passenger, and not the driver, who had thrown the object out of the window.

Almost immediately after Officer Tilghman observed the throwing motion, the fleeing vehicle struck a parked car and a truck. The driver made a quick exit from the vehicle and managed to avoid capture by running off into a wooded area. The passenger, who had struck his head against the windshield during the collision, was immediately apprehended by the police. He was identified as Jerome D. Dockery, the appellant in this case. After detaining Dockery, police officers found a loaded pistol in the street some twenty to twenty-five feet from the location where the Ford had struck the first parked car.

On cross-examination, Officer Tilghman insisted that she had a clear view of the hand from which the pistol was discarded:

Q. . . . . When you saw the hand and when you saw the motion of the hand, did you see something in that hand?

A. I just saw the hand go out the window.

Q. And you clearly saw that hand at that point, correct?

A. Yes, sir.

Q. You were one car length behind, correct?

A. Yes, sir.

B. *The case for the defense.*

After the prosecution had rested, Dockery's attorney briefly re-called Officer Tilghman to the stand as a witness for the defense. In response to counsel's questioning, the officer testified as follows:

Q. Was there anything distinctive that you saw about that hand?

A. No, sir.

Counsel then called Chanea Latricia Kyler, who stated that she was Dockery's girlfriend and the mother of his child. Ms. Kyler testified that on the evening of August 22, 1997, at about 10:30 p.m., and again at about 11:15 to 11:30, she saw Dockery on the street. According to Ms. Kyler, Dockery had a cut on his hand. The cut extended from the base of the hand to the pinky. Ms. Kyler explained that the cut was covered by a white gauze bandage. She testified that she could plainly see the bandages on Dockery's hand when she watched him from a window across the street.

C. *The hospital records.*

Following Dockery's arrest, officers took him to Washington Hospital Center (WHC) for treatment of the injuries he sustained when the Ford struck the parked car and truck. The records of his hospitalization deal primarily with a deep laceration which Dockery sustained to his forehead, but they also contain several references to an injury to his right hand. Specifically, the "Data Base" prepared by a registered nurse alludes to an "old lacer-

ation and sutures in [right][2] hand." The "Narrative Nursing Notes" refer to "[right] hand and sutures from wound." The report of the patient's physical examination states: "ulnar aspect of [right] hand sutures but has opened up." The "discharge instructions" include the following: "Wet to dry dressing changes on [right] hand laceration."

Dockery's attorney initially asked the court for a pretrial *in limine* ruling that the records relating to Dockery's treatment at WHC were admissible. After entertaining an *ex parte* proffer from defense counsel, the judge deferred his ruling until after the close of the government's case.

After the prosecution rested, the defense called the custodian of the WHC records. The custodian identified the records and stated that they were made in the ordinary course of business "at or near after the time that they were created." Dockery's attorney then asked the court to admit the records, arguing that they tended to impeach Officer Tilghman's claim that she had seen Dockery's hand and the officer's assertion that there was nothing unusual about the appearance of the hand. The judge, after hearing argument, excluded the records for lack of relevance because "this is really borderline impeachment if at all."[3] Referring to Officer Tilghman's testimony, the judge stated:

> She said clearly . . . that she saw the hand go in and out of the window suddenly. When one looked at her two demonstrations from the witness stand, she went over the edge of the witness stand banister for a second at most, then back in.

> So, with that kind of demonstration, I don't know what you're impeaching by

this line of effort. I don't think you're impeaching anything.

The jury convicted Dockery of the charges relating to the pistol that had been thrown from the car.[4] This appeal followed.

## II.

## LEGAL ANALYSIS

 It is, of course, axiomatic that a criminal defendant has the right to present exculpatory evidence in his own defense. *See, e.g., Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Martin v. United States,* 606 A.2d 120, 127 (D.C.1991). "[A]s a general rule, a defendant is entitled to wide latitude in presenting evidence tending to impeach the credibility of a witness, especially where[, as here,] that evidence relates to a key government witness." *Washington v. United States,* 499 A.2d 95, 101 (D.C. 1985) (citation omitted). Obviously, however, the defendant has no right to present irrelevant evidence. *See Gibson v. United States,* 536 A.2d 78, 82 (D.C.1987). The dispositive issue in this appeal is whether the evidence excluded by the trial judge was relevant.

 Evidence is relevant if it "makes the existence of a contested fact that is of consequence to the determination of [an] action more or less probable than it would be without that evidence." *Jones v. United States,* 625 A.2d 281, 284 (D.C.1993) (citation omitted). But "[o]rdinarily, any evidence which is logically probative of some fact in issue is admissible . . . unless it conflicts with some settled exclusionary rule." *Martin, supra,* 606 A.2d at 128 (citations omitted). "[I]f the evidence of-

---

2. The word "right" is abbreviated in the record by a capital R contained in a circle.

3. The judge initially ruled that the critical entries in the WHC records were hearsay, but later reconsidered in light of *Clements v. United States,* 669 A.2d 1271, 1273–74 (D.C.1995), and *Adkins v. Morton,* 494 A.2d 652, 662 (D.C.1985).

4. The police recovered a second loaded pistol in the vehicle. Dockery was also charged with carrying the second pistol without a license and with failure to register the pistol or the ammunition in it. The jury acquitted Dockery of all charges relating to the weapon which was found in the car.

fered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury." *Home Ins. Co. v. Weide*, 78 U.S. (11 Wall.) 438, 440, 20 L.Ed. 197 (1870); *see also Martin, supra*, 606 A.2d at 128.

■ The determination of relevance, and the weighing of probative value against prejudicial effect, are confided to the sound discretion of the trial court. *See, e.g., Roundtree v. United States*, 581 A.2d 315, 328 (D.C.1990). Because relevant evidence should ordinarily go to the jury, however, *Weide, supra*, 78 U.S. (11 Wall.) at 440, it should not be excluded unless its probative value is substantially outweighed by its prejudicial effect. *See Johnson v. United States*, 683 A.2d 1087, 1099–1101 (D.C.1996) (en banc), *cert. denied*, 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997) (adopting standard set forth in FED. R. EVID. 403). The trial court's discretion must be exercised in conformity with these well-established legal principles. *See Martin, supra*, 606 A.2d at 132; *In re J.D.C.*, 594 A.2d 70, 75 (D.C. 1991).

■ We conclude as a matter of law that the WHC records excluded by the trial judge satisfied the standards of relevance discussed above. Officer Tilghman was the key witness against Dockery. Whether the officer saw what she claimed to have seen was central to the disposition of the case. If there was evidence tending to cast doubt upon the accuracy of Officer Tilghman's observation and reporting, the accused was entitled to bring that evidence to the attention of the jury.

Officer Tilghman testified on cross-examination that she "clearly," albeit briefly, saw the hand that emerged from the window of the Ford and discarded the pistol which Dockery was later convicted of car-

rying. According to the officer, she observed the event from a car length away. Officer Tilghman further testified that she saw nothing distinctive about the hand.

The defense sought to establish, however, that Dockery's right hand was bandaged at the time and that the bandage was plainly visible. Dockery's girlfriend, Ms. Kyler, explicitly so testified. If her testimony was true, then Dockery's hand was quite distinctive in appearance, and the jury could rationally question whether the hand that the officer claimed to have observed really belonged to Dockery.

But the only witness who testified at trial that Dockery's hand had been bandaged was the mother of Dockery's child. So far as the jury knew, Ms. Kyler's account was entirely uncorroborated. On cross-examination, and again in closing argument, the prosecutor repeatedly (and sometimes quite caustically)[5] challenged Ms. Kyler's credibility, noting that the witness, who had been Dockery's girlfriend for several years, hoped that he would be available to provide support for the couple's baby.

But when the jurors heard the prosecutor assail Ms. Kyler's testimony, they were unaware that Ms. Kyler's evidence was consistent with, and in substantial measure corroborated by, the WHC records. Those records confirmed the existence of an injury to Dockery's right hand, and they referred repeatedly to sutures. The entry in the discharge instructions—"Wet to dry dressing changes on [right] hand laceration"—indicated that there was a dressing on the very hand that was said to have held and discarded the pistol. If the jurors had been apprised of this corroboration of Ms. Kyler's testimony, they might reasonably have credited her account. At the very least, the excluded WHC records

---

5. In closing argument, the prosecutor stated:
 What a coincidence, ladies and gentlemen, that the defendant's girlfriend takes the stand to tell you that the very hand that Officer Tilghman saw was not only band-

aged, but it was bandaged in such a way that it was like a neon sign down there.
 I submit to you that her testimony is incredible.

**308** 

might have reasonably led an impartial juror to have a reasonable doubt of the defendant's guilt even if that juror entertained no such doubt without that evidence.

To be sure, we are not dealing here with certainties. We cannot be positive, solely on the basis of the WHC entries, that Dockery's hand was covered by a readily visible bandage. Moreover, as the government points out, Dockery could have been guilty even if his hand was in fact bandaged. Officer Tilghman might simply have failed to notice the bandage during the brief period that the hand was outside the window. But as Judge Cardozo observed for the court in *Lewis v. Ocean Accident & Guar. Corp.,* 224 N.Y. 18, 120 N.E. 56, 57 (1918), "the law contents itself with probabilities, and declines to wait for certainty before drawing its conclusions." *Accord, Martin, supra,* 606 A.2d at 128 (quoting *Lewis* ). We once again invoke the discussion of relevance in a leading commentary:

> It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common objection that the inference for which the fact is offered "does not necessarily follow" is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence ever could meet. A brick is not a wall.

EDWARD W. CLEARY, *et al.,* MCCORMICK ON EVIDENCE § 185, at 542–43 (3rd ed.1984), quoted in *Martin, supra,* 606 A.2d at 128–29.

 We have no doubt that the excluded evidence made it, at least, "slightly more probable" that Officer Tilghman erroneously identified Dockery's hand as the one that discarded the pistol. The WHC records were therefore relevant. The government has suggested no basis for concluding that the records were substantially more prejudicial than probative; indeed,

we are aware of no legally cognizable prejudice to the prosecution that would have resulted from their admission. Finally, applying the standard enunciated in *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), we are unable to say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *See also Clark v. United States,* 593 A.2d 186, 192 (D.C. 1991) ("To conclude that an error is harmless, we must find it 'highly probable that that error did not contribute to the verdict.' ") (quoting *United States v. Tussa,* 816 F.2d 58, 67 (2d Cir.1987)).

## III.

## CONCLUSION

For the foregoing reasons, Dockery's convictions are reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*