**INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**GMR, LTD., et al., Appellees.**

**No. 82–1641.**

District of Columbia Court of Appeals.

Argued Sept. 14, 1983.

Decided Oct. 21, 1985.

ment on that claim only and remand the case for a new trial.

John Edward Powell, Rockville, Md., for appellant.

Steven M. Levine, Washington, D.C., with whom Walter J. Smith, Jr., Washington, D.C., was on brief, for appellee GMR, Ltd.

Louis Fireison, Bethesda, Md., for appellee Wrecking Corp. of America, Virginia, Inc.

Before MACK, NEWMAN, and TERRY, Associate Judges.

TERRY, Associate Judge:

This case arises from the collapse of one of several buildings comprising a Georgetown redevelopment project known as the Papermill. Nearly two months after the aged structure had been gutted in preparation for its conversion to condominium use, its roof and three walls caved in. Appellant Insurance Company of North America ("INA"), as subrogee of both the project's owner and the general contractor, sued appellees GMR, Ltd. ("GMR"), the project's architect/engineer, and Wrecking Corporation of America, Virginia, Inc. ("Wrecking Corporation"), the demolition subcontractor, alleging breach of contract and negligence on the part of each defendant. At the conclusion of the plaintiff's case, the trial court granted each defendant's motion for a directed verdict. Because we conclude that no reasonable juror could have found Wrecking Corporation to have either acted negligently or breached its contract, we affirm the directed verdicts in Wrecking Corporation's favor. For the same reason, we affirm the directed verdict in favor of GMR on the contract claim. However, after reviewing the rather massive record, we hold that the trial court erred in directing a verdict in favor of GMR on the negligence claim, and thus we reverse the judg-

I

Holland and Lyons Construction, Inc. ("H&L"), was the general contractor for the condominium conversion project. H&L's president was Bruce D. Lyons; its vice president in charge of construction was John T. Conrad; and its superintendent for the Papermill project was Cranson Gates. Testimony at trial[1] established that, long before negotiations with Wrecking Corporation began, Messrs. Lyons, Conrad, and Gates met with representatives of GMR to decide what parts of the building were to be demolished. They recorded their decisions by marking up a set of drawings of the existing building, called the A–B (as-built) plans. It was apparently at this meeting that the H&L staff told GMR that no shoring or bracing of the remaining structure would be necessary after the demolition had been completed. Accordingly, Conrad instructed GMR not to involve itself with the demolition work in any way, except to prepare demolition drawings. Some time later H&L and Wrecking Corporation signed a contract, under which the latter agreed to carry out the demolition in accordance with specifications drafted by Conrad, based on the marked-up A–B plans. According to Conrad, Wrecking Corporation had no role in deciding what would be demolished and what would be left standing; its task was purely ministerial.

In accordance with the specifications, Wrecking Corporation gutted the building, leaving only one interior wall standing inside the structure's outer walls. At about 3:00 a.m. on October 14, 1979, fifty-seven days after Wrecking Corporation completed its demolition work, the building's roof and south wall caved in, bringing a large part of two other walls down with them.

---

**1.** Since the trial court directed a verdict at the close of the plaintiff's case, the only evidence at trial was that presented by the plaintiff INA.

At the time of the collapse, the owner and general contractor were covered by an insurance policy issued by INA insuring them against real property loss. After paying its insureds $513,000 on their claims under the policy, INA filed this action as their subrogee.

Both Lyons and Conrad testified that, at the time they decided against shoring and bracing the building's walls, they did not consider such precautions necessary. Lyons stated that he was not aware of any laws requiring such protective measures. Conrad said that no one informed him before the collapse that the work was being carried out contrary to law.

Michael K. Johns, a registered engineer whom INA hired to investigate the collapse, testified that an architect/engineer's demolition drawings ordinarily include a notice that the general contractor should shore and brace any unsupported walls. The demolition drawings which GMR prepared contained no such notice. According to Johns, an architect/engineer such as GMR is expected to know the local building code and applicable safety regulations. More specifically, Johns stated that an architect/engineer working in the District of Columbia is expected to be familiar with section 21155 of the District of Columbia "Safety Standards, Rules and Regulations—Construction."[2] On the other hand, Johns also testified that a general contractor such as H&L should itself be familiar with local building and safety codes. Johns concluded that H&L was "derelict" in not carrying out the job in accordance with the applicable code provisions. He testified that the collapse was due to, among other things, the failure to shore and brace, H&L's failure to appreciate the building's vulnerability to collapse if the walls were left without support, and H&L's inadequate attention to the project. Neither Johns nor any other witness testified to the standard of care applicable to a demolition subcontractor such as Wrecking Corporation.

INA introduced into evidence H&L's contracts with Wrecking Corporation and GMR. The Wrecking Corporation contract contained the following provisions:

*Section IV—Workmanship*

*   *   *   *   *   *

(d) Subcontractor's work shall be in strict conformity with the law, which shall include all applicable laws, codes, ordinances, rules, regulations, and requirements of Federal, state, county, and municipal authorities .... *If the Subcontractor knowingly performs any work contrary to such laws, codes, ordinances, rules, regulations or requirements, he shall bear all costs arising therefrom.*

(e) ... Subcontractor agrees in connection with his work hereunder ... to maintain and protect all structures ... and to carry on his work in such manner as to avoid injury or damages to persons or property, including his own work and the work of the Contractor ... and be strictly responsible for damages to persons or property by failure to do so, or by Subcontractor's negligence.

*   *   *   *   *   *

*Section X—Insurance*

(a) ... Subcontractor will at all times during the life of this contract carry and maintain ... Public Liability Insurance, *including Completed Operations Liability Insurance,* ... with limits for property damage liability in an amount not less than Fifty Thousand Dollars

---

**2.** 11 DCRR § 21155 (1981 reprint) provides in pertinent part:

(i) If a building to be demolished has been partially damaged, shoring or bracing shall be used to protect workers from a partial or total collapse.

(j) Lateral ties, such as joists, shall not be removed from a building, leaving the walls without adequate lateral support. No section of wall more than 22 feet high shall be permitted to stand without adequate lateral support, such as provided by floor joists or temporary braces, unless such wall was originally designed to stand in that condition without such lateral support.

($50,000) for damages on account of each accident and not less than One Hundred Thousand Dollars ($100,000) in the aggregate .... [Emphasis in original.]

INA proffered testimony from Conrad that Wrecking Corporation had failed to obtain insurance as required under section X (a) of the contract and that, had he known of this failure, he would have stopped the work. The court sustained an objection to the testimony, ruling that INA first had to show that Wrecking Corporation's work caused the building to collapse. INA elicited no further testimony concerning the Wrecking Corporation contract. On cross-examination, however, both Lyons and Conrad stated that Wrecking Corporation had done its work in accordance with the contract.

The GMR contract contained no specific reference to any duties relating to the demolition work. According to Johns, the "complete architectural drawings and details" which the contract required GMR to provide "might or might not" include demolition drawings.[3] Conrad acknowledged on cross-examination, however, that GMR had performed its work in accordance with its contract.

At the conclusion of INA's case, the court granted both defendants' motions for directed verdicts in their favor. It held that INA had failed to establish a *prima facie* case against Wrecking Corporation on either claim. With regard to GMR, the court ruled that, while INA had failed to prove a breach of contract, it had established a *prima facie* case of negligence. Nevertheless, it directed verdicts for GMR on both claims, holding that, as a matter of law, H&L had assumed the risk of GMR's negligence and had been contributorily negligent. On appeal INA challenges each of these rulings. For purposes of this appeal, GMR does not contest the trial court's ruling that INA established a *prima facie* case of negligence against it.

---

**3.** The GMR contract, however, was dated March 27, 1979, more than three months after GMR

## II

The standard of review on appeal from directed verdict rulings is the same as the test at the trial level. *Ceco Corp. v. Coleman,* 441 A.2d 940, 944 (D.C.1982). Under that standard, we must view the evidence in the light most favorable to the non-movant, and may uphold a directed verdict only "where the probative facts are undisputed and where reasonable minds can draw but one inference from them." *Johnson v. Weinberg,* 434 A.2d 404, 407 (D.C.1981) (citation omitted); *accord, e.g., Diamond Service Co. v. Utica Mutual Insurance Co.,* 476 A.2d 648, 652 (D.C.1984). With one exception, the trial court's rulings meet the *Johnson* test.

### A. Wrecking Corporation

At one point during the trial, the judge remarked to Wrecking Corporation's counsel that INA had "never laid a glove" on him. We agree. INA utterly failed to present any evidence from which a reasonable juror could have found Wrecking Corporation to have been negligent or in breach of contract. INA's breach of contract claim seems to be based on section II (c) of the contract, in which Wrecking Corporation represents itself to be an expert in demolition work. As an expert, INA contends, Wrecking Corporation was obliged to be aware of District of Columbia regulations requiring shoring and bracing of unsupported walls in construction projects. INA points also to section IV (d), which contains assurances of compliance with applicable regulations and assigns liability to Wrecking Corporation for any damage resulting from any knowing violation of them. However, INA presented no evidence at all that Wrecking Corporation "knowingly perform[ed] any work contrary to such ... regulations," which would have been a breach of section IV (d); indeed, it did not even prove that Wrecking Corporation was or should have been aware of the District's shoring and bracing regulations.

prepared the demolition drawings and several days after it revised them.

Thus there was no evidence from which a reasonable trier of fact could find that Wrecking Corporation breached the contract. Indeed, what evidence there was suggests the opposite: both Lyons and Conrad testified to their satisfaction with Wrecking Corporation's performance. The directed verdict on the breach of contract claim was manifestly correct.

We reach the same conclusion with regard to the directed verdict on INA's negligence claim. INA's theory here centers on the same alleged failure of Wrecking Corporation to comply with local and federal laws concerning shoring and bracing. But, as we have noted, INA made no showing that Wrecking Corporation's performance failed to meet legal requirements; in fact, Mr. Conrad, H&L's former vice president, testified that he was unaware that the demolition was being carried out in violation of applicable law, and Mr. Lyons, H&L's president, said he knew of no laws requiring shoring and bracing. Moreover, INA never presented any evidence at all as to what the relevant standard of care might be. *See Meek v. Shepard,* 484 A.2d 579, 581 (D.C.1984), citing *Haven v. Randolph,* 161 U.S.App.D.C. 150, 151, 494 F.2d 1069, 1070 (D.C.1974). Perhaps INA could have proven that a demolition contractor is expected to be acquainted with local regulations concerning shoring and bracing, but in this case it did not even begin to do so. In light of the utter lack of evidence against Wrecking Corporation, no reasonable juror could have found it negligent. Hence the directed verdict was proper on the negligence claim as well.

## B. *GMR, Ltd.*

There is likewise no evidentiary basis for INA's contract claim against GMR. INA does not cite any contractual provision which GMR might have breached, nor does it invite our attention to any testimony supporting its claim. In fact, Mr. Conrad testified that, like Wrecking Corporation, GMR had performed its contractual duties completely. In the absence of any proof of a breach of contract by GMR, the trial court was entirely correct in directing a verdict in its favor on this claim.

We reach a different conclusion, however, with respect to the negligence claim against GMR. The question before us here is not the usual one presented in an appeal from a directed verdict for a defendant. In this case the trial court ruled, and GMR does not contest its ruling, that INA made a *prima facie* showing of negligence. Rather, we must decide whether, as a matter of law, INA's subrogor H&L was contributorily negligent and assumed the risk of GMR's negligence. That a court may direct a verdict on this ground is implicit in several decisions of this court. *See, e.g., Phillips v. D.C. Transit System, Inc.,* 198 A.2d 740 (D.C.1964) (affirming a directed verdict based on evidence of plaintiff's contributory negligence). *But see Marshall v. District of Columbia,* 391 A.2d 1374, 1379 (D.C.1978) (contrasting Rule 41 (b) motion to dismiss with Rule 50 motion for directed verdict).

Crucial to the trial court's ruling was the testimony of Michael Johns, the engineer hired by INA. Johns testified as an expert that H&L's personnel were not qualified to determine whether shoring and bracing were necessary, but that H&L, as a general contractor, was expected to be familiar with local building and safety codes, including the shoring and bracing regulations. H&L was, according to Johns, "derelict" in not making sure that the demolition was lawful, and its failure to exercise "prudent care" was a significant cause of the collapse.

From this damaging testimony, a reasonable jury might conclude that H&L failed to exercise the degree of care normally expected of a general contractor, and that its failure was the proximate cause of the building's collapse. A reasonable jury might also find from all the evidence that H&L knowingly assumed the risk of not shoring or bracing, having foregone such safety measures in earlier projects. Then again, a reasonable jury might reject Mr.

Johns' expert opinion and find in favor of INA. Neither the trial court nor this court may presume that the jury would have accepted Johns' testimony. "No rule of law compels the trier of facts to be bound by the opinion of an expert and he need not surrender his own judgment unless from all the evidence he finds the expert opinion to be correct." *Mann v. Robert C. Marshall, Ltd.*, 227 A.2d 769, 771 (D.C.1967); *accord, e.g., Rock Creek Plaza-Woodner Limited Partnership v. District of Columbia*, 466 A.2d 857, 859 (D.C.1983) ("even when uncontradicted, an expert's testimony is not binding on the court"); *Hughes v. Pender*, 391 A.2d 259, 263–264 (D.C.1978). In directing a verdict for GMR on the negligence claim, the trial court improperly assumed the jury's role as finder of fact. We must therefore reverse for a new trial on the negligence claim against GMR.

This conclusion is not inconsistent with the cases in which this court has upheld a directed verdict or judgment n.o.v. based on an affirmative defense. In *Phillips v. D.C. Transit System, Inc., supra,* we affirmed a directed verdict based on the trial court's ruling that the plaintiff was negligent as a matter of law. The plaintiff had testified that before entering the intersection where the accident occurred, she stopped and looked both ways; seeing no traffic approaching from either direction, she proceeded into the intersection, where she was hit by a bus. Another witness, however, had testified that at the time the plaintiff stopped, the bus was 250 to 300 feet from the intersection. This court held that the plaintiff had the last clear chance to avoid the collision: "there can be no doubt from all the testimony, that had appellant looked effectively ... she would have seen the bus coming toward her." 198 A.2d at 741. While we took note of the testimony of the independent eyewitness, the plaintiff's own testimony was the key to the case.

The damaging effect of the plaintiff's testimony was clearer still in *Singer v. Doyle,* 236 A.2d 436 (D.C.1967). In that case we reversed the trial court's refusal to grant a judgment n.o.v., holding that the plaintiff's testimony proved contributory negligence as a matter of law. As in *Phillips,* the plaintiff testified that she entered an intersection and failed to see an oncoming car. "The only conclusion that may be drawn from appellee's own testimony," we held, "is that ... she failed either to look at all or to look observantly and see what should have been plainly visible." 236 A.2d at 438. In each of these cases, the plaintiff's own testimony did her in; a reasonable jury could hardly disregard the plaintiff's own self-inculpating evidence. *See also Young v. Vincent,* 310 F.2d 709, 711 (10th Cir.1962) ("It is fundamental that it is the duty of the trial court to direct a verdict when plaintiff's own testimony undisputably establishes contributory negligence as a matter of law").

Here, on the other hand, the evidence supporting the affirmative defenses of contributory negligence and assumption of risk, while persuasive, was not so conclusive as to compel a verdict for the defendant GMR. We therefore reverse the judgment as to this one claim and remand for a new trial. In all other respects we affirm the judgment below.

*Affirmed in part, reversed in part, and remanded.*