Angela WHITE, Appellant,

v.

William HAIRSTON, Appellee.

No. 96–CV–172.

District of Columbia Court of Appeals.

Argued June 16, 1997.

Decided July 31, 1997.

---

8. See note 5, *supra.*

J. Kenneth Kruvant, Washington, DC, for appellant.

Richard S. Schrager, Rockville, MD, for appellee.

Before FARRELL, RUIZ, and REID, Associate Judges.

FARRELL, Associate Judge.

■ In this personal injury action, plaintiff-appellant's treating physician was allowed to express his opinion "to a reasonable degree of medical certainty" that plaintiff's injuries stemmed causally from the automobile accident for which defendant conceded liability. The trial court, however, refused to qualify the physician as an expert before the jury, and refused to instruct the jury on consideration of expert testimony. In both instances, the court relied solely upon this court's decision in *Glorious Food v. Georgetown Prospect Place Assocs.*, 648 A.2d 946 (D.C.1994), which in turn relied on *Beach v. United States*, 466 A.2d 862 (D.C.1983) (per curiam), for the categorical rule that the same person may not testify both as an expert and as a fact witness in the same proceeding.[1] Just recently, however, this court overruled *Beach* insofar as it declared a *per se* ban on dual lay and expert testimony by a single witness. Instead the court committed "to the trial court's discretion in each case whether the danger of jury confusion can be neutralized by lesser measures than exclusion of dual testimony altogether." *Eason v. United States*, No. 95–CF–4, slip op. at 2, —— A.2d ——, —— (1997 WL 471486) (D.C. June 16, 1997) (en banc) (per curiam). In light of *Eason*, we conclude that a remand of the case to the trial court is necessary.

### I.

Plaintiff brought suit for injuries and lost earnings allegedly suffered in an automobile accident caused by defendant's negligence. Defendant conceded negligence at trial, and the case went to the jury on the issues of causation and damages. Before trial plaintiff named Dr. Hamid Quraishi, who had treated and ultimately performed surgery on her, as an expert in orthopedic surgery. After voir dire of Dr. Quraishi at trial,[2] however, the court refused to qualify him as an expert, stating that he could "give his opinion [on causation] as [plaintiff's] treating physician," but that under *Glorious Food* plaintiff could not "put the halo of expert around him." When plaintiff acceded to this ruling ("I will not proffer [Dr. Quraishi] as an expert then"), the court instructed the jury that "[t]he request to proffer him as an expert is withdrawn. He will testify as the plaintiff's treating physician."

Although testifying only in this capacity, Dr. Quraishi was nonetheless asked if he had "an opinion to a reasonable degree of medical certainty" whether plaintiff's injuries, particularly the "ulnar nerve entrapment" that had necessitated her elbow surgery, were causally related to the automobile accident. He answered "yes" and stated the basis of that opinion. He denied that the surgery had been prompted by an unrelated carpal tunnel syndrome.

Following Dr. Quraishi's testimony, plaintiff introduced and played the videotaped deposition of a second treating physician, Dr. Heshmat Majelessi. Since plaintiff has not included that videotape in the record on appeal, we cannot confirm whether Dr. Majelessi too voiced an opinion on causation. What is significant, though, is that while this tape was being played, the judge again instructed the jury that the doctor "is not an expert. He is the treating physician."

---

1. *Beach* was a criminal case, but as the court in *Glorious Food* pointed out, some of our civil decisions had shown at least a tendency to apply its rule in the civil context as well. *E.g., Greenberg v. Sher*, 567 A.2d 882, 885 n. 7 (D.C.1989); *Bell v. Jones*, 523 A.2d 982, 990 (D.C.1986). Other civil decisions—besides *Glorious Food*— were quite inconsistent with the rule of *Beach*. *E.g., Richbow v. District of Columbia*, 600 A.2d 1063, 1067–70 (D.C.1991); *Adkins v. Morton*, 494 A.2d 652, 658–59 (D.C.1985); *Abbey v. Jackson*, 483 A.2d 330, 333–35 (D.C.1984).

2. On voir dire Dr. Quraishi testified that he was a Board-certified orthopedic surgeon, having practiced in that specialty since 1976.

The defense called no expert witness. At the close of all the testimony, the trial court rejected plaintiff's request for Standard Civil Jury Instruction No. 3-3[3] ("Expert Opinion"), stating again that while she had "allowed [Dr. Quraishi] to give his medical opinion the same as if he had been an expert," she "wouldn't allow him to wear the 'halo' of 'expert'" in violation of the *Beach* rule as stated in *Glorious Food.*

The jury returned a damage award of $14,967.37 for plaintiff, "substantially less"—plaintiff maintains—than the special damages she alleged and proved.

## II.

In *Eason*, as pointed out, we rejected *Beach*'s "outright prohibition of dual testimony in every case." *Eason*, slip op. at 3, at ———. We noted the division's observation that *Beach* had "'cited nothing as authority for [its] holding,'" *id.,* and pointed to our previous recognition in civil cases "that it is 'not improper to allow [an expert] witness . . . to give testimony based on both his expert opinion and his personal knowledge.'" *Id.* at 2, at ——— (quoting *Ohio Valley Const. Co., Inc. v. Dew,* 354 A.2d 518, 523 (D.C. 1976)). We referred particularly to our decision in *Adkins v. Morton, supra* note 1, as holding that a "treating physician should have been permitted to testify as both [a] fact and [an] expert witness despite not having been named [as an expert] under Super. Ct. Civ. R. 26(b)(4)." *Eason*, slip op. at 3, at ——— n. 4. In place of the *Beach* rule, therefore, we committed to the trial court's discretion in each case whether "lesser measures than exclusion of dual testimony altogether" were appropriate. *Id.* at 2, at ———. We said that "ordinarily" when the danger of confusion from dual testimony seems realistic to the trial court, an instruction to the jury "'to

evaluate [the] testimony separately [in its two aspects]'" will suffice to neutralize the risk, *id.* at 3, at ——— (citation omitted), so that permitting such testimony "will only rarely be error." *Id.* at 4, at ———.

When juxtaposed to the civil cases cited in *Eason* (as well as others cited in note 1, *supra* ), the opinion in *Glorious Food* on which the trial court relied makes plain that before *Eason* our decisions did not speak with one voice on the issue of dual testimony. The court has now settled the issue, however, and under *Eason* the trial court's blanket refusal to qualify Dr. Quraishi as an expert and give the expert opinion instruction was a failure to exercise proper discretion. *See Johnson v. United States,* 398 A.2d 354, 363 (D.C.1979).[4]

Not every erroneous exercise of discretion requires reversal, however, *id.* at 366, and in arguing lack of prejudice from the trial court's ruling defendant points out that Dr. Quraishi was allowed to state to the jury his credentials and, more importantly, his opinion on causation as to each of plaintiff's injuries and the basis for it.[5] That opinion, defendant asserts, would naturally be understood by the jury as offered by a person claiming specialized knowledge of the subject, *i.e.,* an expert. Plaintiff asserts, by contrast, that the expert opinion instruction which the court refused to give adds positive strength to expert testimony at least when, as here, that testimony is uncontradicted by other expert testimony. Moreover, the trial court's direction to the jury twice that plaintiff's doctors were testifying as treating physicians and not experts (including a seeming rebuff in the statement that "[t]he request to proffer [Dr. Quraishi] as an expert is withdrawn") served to unfairly diminish the stat-

---

3. Standardized Civil Jury Instructions for the District of Columbia, No. 3-3 (1981).

4. We do not hesitate to give plaintiff, whose case has not reached final judgment, the benefit of the holding in *Eason. See Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Defendant can assert no reliance interest in the *Beach* rule of exclusion given the uncertainty of

its application in the civil context even before *Eason.*

5. Defendant argues that plaintiff waived the claim of error by "withdraw[ing]" his request to have the doctor declared an expert. But in stating that "I will not proffer [Dr. Quraishi] as an expert then," plaintiff's counsel was only exercising the choice the court had given him moments before to "withdraw your request" or have the court "overrule" it on the basis of *Glorious Food.*

ure of her witnesses[6] in the jury's eyes.

We think plaintiff has the better of the argument. The trial court was aware of the prestige or enhanced credibility that opinion testimony may receive from expert qualification; that was the "halo" she read our decisions as withholding from a witness who testifies to facts or a course of treatment. Defendant is correct that in part the standard instruction on expert opinion (No. 3–3) merely states an exception to the rule against opinion testimony by allowing a person "who by education, study and experience has become an expert in any ... science" to give an opinion on an issue material to the case: the jury is told to "consider[ ] and weigh[ ]" the opinion "like any other evidence" and that it is "not bound by it" if the facts underlying it "have not been established to [the jury's] satisfaction." Significantly, however, the instruction concludes by saying that the jury "should not reject [the opinion] if it is uncontradicted and not inherently unreasonable." That accords with the principle in our decisions that "an expert's testimony may not 'arbitrarily be disregarded, disbelieved or rejected.'" *Rock Creek Plaza–Woodner Ltd. Partnership v. District of Columbia,* 466 A.2d 857, 859 (D.C.1983) (quoting *Medical Serv. of D.C. v. Llewellyn,* 208 A.2d 734, 736 (D.C.1965)). The significance of the expert opinion instruction is that ordinarily no other instruction given singles out in this way a class of witnesses whose testimony deserves special credence if stated conditions are met.

The jury was not allowed to consider Dr. Quraishi's opinion guided by this instruction. And, as plaintiff argues, whatever respect the jury might have gained for the doctor's opinion by learning his credentials was erased when the court twice pointedly explained that he was not testifying as an expert. Our decisions have emphasized the importance, indeed usually the necessity, of expert opin-

ion on issues like causation in medical malpractice cases. *E.g., Lasley v. Georgetown Univ.,* 688 A.2d 1381 (D.C.1997). Although the jury heard Dr. Quraishi's opinion on causation, the refusal to qualify him as an expert and give the expert opinion instruction deprived plaintiff of the assistance both might have given the jury in evaluating and crediting his testimony.[7]

We therefore will remand the case to the trial court for an admittedly *post hoc* decision, under *Eason,* whether Dr. Quraishi should have been allowed to testify as an expert. Although the record presently before us suggests no reason why "lesser measures than exclusion," *Eason,* slip op. at 2, at —— would not have sufficed to prevent jury confusion,[8] the trial court did not consider that likelihood given her reliance on the *Beach* rule, and we are not prepared to say at this point that she could properly exercise her discretion only one way. In the event the trial court concludes that her refusal to let the doctor testify as an expert was error, she should order a new trial. Otherwise she may re-enter judgment and plaintiff may seek review of that decision.

*Reversed and remanded.*

---

6. As pointed out, we do not know the substance of any opinion testimony given by Dr. Majelessi, and so our analysis focuses only upon Dr. Quraishi.

7. Defendant argues as evidence of no prejudice the jury's award of nearly $15,000 in damages when plaintiff claimed only some $12,000 in medical expenses. But plaintiff claimed some

$22,000 in lost income as well, and we cannot say with any assurance that the jury's aggregate award would have been unchanged had the doctor's opinion been presented to them as certified expert testimony.

8. We note also that the court did not question Dr. Quraishi's expert qualifications.