**Craig A. RIDDICK, Plaintiff,**

v.

**WASHINGTON HOSPITAL CENTER et al., Defendants.**

**Civ.A. No. 97–1859 (PLF).**

United States District Court, District of Columbia.

Nov. 25, 1998.

Ronald A. Wright, Washington, DC, for plaintiff.

Suzanne Nyland, Assistant U.S. Attorney, Washington, DC, for Government.

Roger W. Heald, Fairfax, VA, for Michael Dennis & Circle Neurosurgery.

Brian J. Nash/Stuart N. Herschfeld, Wharton Levin Ehrmantraut Klein & Nash, Annapolis, MD, for Washington Hospital Center.

Catherine A. Hanrahan, Carr Goodson Lee & Warner, Washington, DC, for Dr. Alexander Mark.

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on the motion for summary judgment filed by the two remaining defendants in this case, Dr. Michael Dennis and Circle Neurosurgery, Inc. ("Circle"), and plaintiff's opposition. Plaintiff claims that Dr. Dennis and Circle were negligent when they failed to treat him for a brain tumor. Defendants argue that because plaintiff can present no expert testimony as to causation and injury resulting from any breach of the applicable standard of care and because such testimony is required in a medical malpractice case, they are entitled to judgment as a matter of law.

While plaintiff has been prohibited from offering the testimony of an expert witness retained for purposes of this litigation because of his counsel's failure to comply with prior orders of this Court and with Rule 26 of the Federal Rules of Civil Procedure, he is not precluded from offering the testimony of his treating physician. Since the Court finds that the affidavit of one of plaintiff's treating physicians raises a genuine issue of fact on the issues of causation and injury, defendants' motion for summary judgment will be denied.

## I. BACKGROUND

Plaintiff Craig Riddick went to the Washington Hospital Center ("WHC") on November 17, 1991 following an automobile accident in which he sustained facial and head injuries. The WHC performed a series of tests and x-rays which indicated that Mr. Riddick had a lesion or tumor on his brain. Plaintiff was hospitalized from November 17 to November 21, 1991. The WHC discharged him on November 21, 1991 with instructions to follow up at the offices of defendant Dr. Michael Dennis.

Mr. Riddick made two trips to Dr. Dennis' offices in December of 1991. During the first trip, Mr. Riddick alleges that the receptionist refused to let him see Dr. Dennis because Mr. Riddick did not have any health insurance. When Mr. Riddick subsequently returned to Dr. Dennis' offices, Mr. Riddick alleges that Dr. Dennis examined him briefly

in the reception area. After the examination, Dr. Dennis provided Mr. Riddick with a note stating that he had been caring for Mr. Riddick since November 17, 1991 and that Mr. Riddick was fit to return to work.

On April 11, 1994, Mr. Riddick was involved in another automobile accident. As a result, he was admitted to Providence Hospital, where Dr. Sakiliba Mines examined him and took x-rays. Dr. Mines concluded that the lesion or tumor had grown. On April 29, 1994, Mr. Riddick underwent an excisional biopsy, which revealed the presence of a cancerous tumor. The tumor was surgically removed by Dr. Saied Jamshidi, a neurosurgeon. Dr. Mines and Howard University Hospital monitored the patient after the surgery and administered a course of radiation-oncology.

The Court has entered a number of scheduling orders in this case and has admonished plaintiff's counsel a number of times for failing to comply with these orders. In one such order it directed that reports by plaintiff's retained experts must be produced by March 26, 1998. *See* Order of January 22, 1998. No expert reports were provided, and plaintiff represented in his opposition to the WHC's motion to dismiss or for summary judgment that he did not intend to call any experts that would require a Rule 26(a)(2)(B) report and intended to rely solely on the testimony of his treating physicians to support his theories of medical malpractice. *See* Order of May 14, 1998 at 1. The Court ordered that because plaintiff had failed to submit expert reports as required by the Federal Rules of Civil Procedure and the Court's orders, "he shall not be permitted to use any expert testimony (outside of the plaintiff's treating physicians) during trial or at any other point during the proceedings of this case." Order of May 14, 1998 at 2 (citing Rule 37(c), Fed.R.Civ.P.); *see also* Order of July 6, 1998 at 3.

In their motion for summary judgment, Dr. Dennis and Circle argue that, based on the deposition testimony of Dr. Mines and Dr. Jamshidi, it is apparent that plaintiff has no expert who can testify on the issues of causation and injury resulting from the breach of the standard of care. After receiving no timely response to this motion from plaintiff's counsel, on August 31, 1998, the Court granted him a final opportunity to file an opposition to the motion. *See* Order of August 31, 1998. Thereafter, counsel did file an opposition along with an affidavit from Dr. Mines, which was amended the next day.[1]

## II. DISCUSSION

As defendants point out, in a negligence action founded on medical malpractice the plaintiff must establish three elements: (1) the applicable standard of care, (2) a violation of that standard of care by the defendant, and (3) a causal relationship between the violation and the plaintiff's injury. *Washington v. Washington Hosp. Ctr.,* 579 A.2d 177, 181 (D.C.1990); *Ornoff v. Kuhn and Kogan Chartered,* 549 A.2d 728, 731 (D.C.1988). Furthermore, where such a case involves the exercise of professional skill and judgment, a jury usually will not be qualified without the assistance of an expert to determine whether there was negligent treatment and whether it caused injury. *Washington Hosp. Ctr. v. Martin,* 454 A.2d 306, 308 (D.C.1982); *see Harris v. Cafritz Memorial Hosp.,* 364 A.2d 135, 137 (D.C.1976). It is established therefore that the use of expert testimony is required to prove each of the three elements of a medical malpractice claim when the subject is not likely to be within the common knowledge of the average person, as it usually is not. *See Allen v. Hill,* 626 A.2d 875, 877 (D.C.1993) (citing *District of Columbia v. Barriteau,* 399 A.2d 563, 569

---

1. Other than Dr. Mines, plaintiff's only other potential medical witness is Dr. Jamshidi, Mr. Riddick's neurosurgeon. It appears from his deposition testimony, however, that he has no opinion with respect to the standard of care, any deviation therefrom, or any causal relationship between any possible deviation and Mr. Riddick's injury. *See* Defendant's Motion for Summary Judgment at 4–5 (quoting Deposition of Dr. Jam-

shidi). Nor does plaintiff's opposition to the motion for summary judgment refer to Dr. Jamshidi's opinion, if any, as to the standard of care, any breach of that standard or the cause of injury to Mr. Riddick. The Court therefore understands that Dr. Jamshidi, if he testifies at all, will be testifying *only* to the facts of what he did and not to any opinions he may have.

(D.C.1979)); *Washington v. Washington Hosp. Ctr.*, 579 A.2d at 181.

■ Considering the neurological complexity of the brain, plaintiff in this case necessarily must offer expert testimony concerning the applicable standard of care for treatment once a lesion or tumor on the brain is discovered, as well as with respect to any deviation from that standard and the causal relationship, if any, between that deviation and the injury. *See Washington v. Washington Hosp. Ctr.*, 579 A.2d at 181 (expert testimony usually required to establish each of the elements except where the proof is so obvious as to lie within the ken of the average lay juror); *cf. Allen v. Hill*, 626 A.2d at 877–78 (finding that a root canal is not within the realm of common knowledge and everyday experience).

Rule 26 of the Federal Rules of Civil Procedure, as amended in 1993, requires a party intending to rely on such expert testimony at trial to disclose the identity of the expert witness to the other parties and, "with respect to a witness who is retained or specifically employed to provide expert testimony," to provide a written report prepared and signed by the witness. Rule 26(a)(2)(A), (B), Fed.R.Civ.P. No expert is to be deposed until after the report is provided, Rule 26(b)(4)(A), Fed.R.Civ.P., and the failure to submit an expert's report ordinarily results in the exclusion of the expert witness' testimony at trial. Rule 37(c)(1), Fed.R.Civ.P. Because the report requirement only applies to experts retained or specifically employed to provide such testimony, however, "[a] treating physician ... can be deposed or called to testify at trial without any requirement for a written report." Rule 26, Fed. R.Civ.P., 1993 Advisory Committee Note.

■ As a treating physician, Dr. Mines may describe what she has seen, describe and explain her diagnosis and the treatment she prescribed, and offer her opinions and expert inferences therefrom—all without running afoul of the constraints of Rules 26 and 37 of the Federal Rules of Civil Procedure. *See Piper v. Harnischfeger Corp.*, 170 F.R.D. 173, 175 (D.Nev.1997); *Brown v. Best Foods, a Division of CPC Intern., Inc.*, 169 F.R.D. 385, 387–88 (N.D.Ala.1996); *Salas v.*

*United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995). As one court has said:

Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a)(2)(B).

*Shapardon v. West Beach Estates*, 172 F.R.D. 415, 416–17 (D.Hawai'i1997); *see Piper v. Harnischfeger Corp.*, 170 F.R.D. at 175 ("It is common place for a treating physician during, and as a part of, the course of treatment ... to consider such things as the cause of the medical condition ... and the extent of disability caused by the condition, if any"); *cf. White v. Hairston*, 698 A.2d 471, 472 (D.C.1997) (treating physician may offer expert testimony that plaintiff's injuries stemmed causally from action for which defendant conceded liability).

■ So long as a treating physician "acquired the opinions that are the subject of the testimony directly through treatment of the plaintiff, the treating physician 'cannot be forced to file a written report required by Rule 26(a)(2)(B).' " *Brown v. Best Foods, A Division of CPC Intern., Inc.*, 169 F.R.D. at 388 (quoting *Salas v. United States*, 165 F.R.D. at 33). "To the extent that the treating physician testifies only as to the care and treatment of his/her patient, the physician is not to be considered a specially retained expert notwithstanding that the witness may offer opinion testimony under Fed.R.Evid. 702, 703 and 705." *Wreath v. United States*, 161 F.R.D. 448, 450 (D.Kan.1995). Thus, if Dr. Mines' opinions were reached during the course of, and in connection with, her diagnosis and treatment of plaintiff, she may testify about them at trial despite the Court's earlier orders precluding expert testimony because of plaintiff's counsel's failure to comply with Rule 26(a)(2)(B) and this Court's orders.[2]

■ The issue thus comes down to whether Dr. Mines reached her opinions about causation and injury directly through her treatment of Mr. Riddick or whether she

---

2. Contrary to defendants' claim that Dr. Mines'    deposition testimony indicates that she has no

developed those opinions close in time to the litigation of this matter and in connection therewith or at the request of counsel. *See Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993). For example, if it turns out that Dr. Mines was requested to review medical records of another health care provider in order to develop an opinion for the litigation of this matter rather than having reviewed the records on her own in 1994 in order to provide treatment, she will not be permitted to give her opinion as to causation and injury. *Wreath v. United States*, 161 F.R.D. at 450; *see Patel v. Gayes*, 984 F.2d at 218 (in determining if expert needs to be identified in advance and required to prepare report, Rule 26 and its report requirement "focus[ ] not on the status of the witness [as a treating physician], but rather on the substance of the testimony"); *Bucher v. Gainey Transp. Service of Indiana, Inc.*, 167 F.R.D. 387, 390 (M.D.Pa.1996) (same). While some of the language of her September 16, 1998 amended affidavit suggests that Dr. Mines did in fact review other providers' records solely for the purpose of litigation, perhaps even after the motion for summary judgment was filed, the final paragraph of the affidavit seems to indicate that her opinions were formed earlier in connection with treatment. Defendants are free to reopen the deposition of Dr. Mines to explore this issue in depth.

A separate Order consistent with this Memorandum Opinion will be issued this same day.

SO ORDERED.

## ORDER

Upon consideration of the motion for summary judgment filed by defendants Dr. Michael Dennis and Circle Neurosurgery, Inc., the opposition thereto, and the affidavit of Dr. Sakiliba Mines, and for the reasons stated in the Memorandum Opinion issued this same day, it is hereby

ORDERED that defendants' motion for summary judgment is DENIED; it is

FURTHER ORDERED that defendants may re-examine Dr. Sakiliba Mines at an oral deposition under oath on or before January 10, 1999; the failure of plaintiff to make her available on reasonable notice will result in the exclusion of her testimony; it is

FURTHER ORDERED that the pretrial conference in this case is scheduled for January 20, 1999 at 4:00 p.m.; and it is

FURTHER ORDERED that trial in this case is scheduled to begin on January 26, 1999 at 1:30 p.m.

SO ORDERED.

---

opinion on the issues of causation and injury, the deposition is at best unclear and inconclusive. *See* Defendant's Motion for Summary Judgment at 3–4 (quoting Deposition of Dr. Sakiliba Mines). In her affidavit filed subsequent to her deposition testimony and in response to the pending motion, Dr. Mines stated: "When the patient was declared discharged and without a referral for follow up of the brain tumor on 11/21/91, the tumor continued to grow ... [and] became large enough to create seizures and requiring removal by neurosurgery.... The tumor should have been followed by serial scans and the patient should have been under medical supervision...." September 16, 1998 Amended Affidavit of Dr. Mines at 2. These statements indicate that Dr. Mines does have an opinion as to causation and injury. The affidavit does not contradict Dr. Mines' prior sworn testimony. Instead, it merely clarifies her deposition testimony, which is replete with ambiguities and unresponsive answers so that one is left confused about the extent of her opinion about causation and injury. It therefore may be considered by the Court on this motion. *See Pyramid Securities, Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C.Cir.1991).